UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF NEW YORK
-------------------------------------------------------X
DAVID PAUL READ,

                           Petitioner,

            -against-

SUPERINTENDENT M. THOMPSON,

                           Respondent.[1]
-------------------------------------------------------X

**REPORT AND
RECOMMENDATION**

13 Civ. 3661(KMK)(PED)

TO THE HONORABLE KENNETH KARAS, United States District Judge:

      On August 17, 2010, a Rockland County jury convicted petitioner of Criminal Contempt

in the First Degree (New York Penal Law § 215.51[b][v]).  The conviction stemmed from an

April 27, 2009 incident, witnessed by Town of Suffern police officers, during which petitioner

harassed and threatened to kill his wife, Michelle Surdak Read, in violation of an order of

protection which had been issued by the Town of Clarkstown Justice Court.  On December 15,

2010, petitioner was sentenced to an indeterminate term of two to four years, imposed to run

consecutive to a three-and-one-half to seven year term imposed pursuant to a separate

conviction.[2]  Petitioner is currently incarcerated at Collins Correctional Facility in Collins, New

York.

      Presently before this Court is petitioner's *pro se* Petition for a Writ of Habeas Corpus

---

    [1] The Clerk of the Court has amended the caption to reflect the substitution of Mr.
Thompson as Superintendent of Collins Correctional Facility, at petitioner's request and
pursuant to Rule 25(d) of the Federal Rules of Civil Procedure.  (Dkt. 40-41).

    [2] On September 24, 2010, a Rockland County jury convicted petitioner of domestic
violence charges, Indictment No. 428-08, arising from a July 31, 2008 incident involving the
same victim.  The two cases were consolidated for purposes of sentencing and appeal.  Petitioner
has filed a separate habeas corpus petition, docketed as Read v. Thompson, 13 Civ. 6962
(KMK)(PED), attacking his convictions from No. 428-08, the earlier-filed, later-tried case.  That
petition will be analyzed in a separate Report and Recommendation.

pursuant to 28 U.S.C. § 2254.  This petition is before me pursuant to an Order of Reference dated July 12, 2013.  (Dkt. 10).  For the reasons set forth below, I respectfully recommend that your Honor deny the petition in its entirety.

# I. **BACKGROUND**[3]

A.  Indictment and Pre-Trial Proceedings

Petitioner was charged under Indictment No. 261-09 with two counts of criminal contempt in the first degree for violating an order of protection "in the County of Rockland." (Resp. Opp. Exh. G)[4].  On June 12, 2009, the District Attorney disclosed the locations of the two counts of the indictment in a Bill of Particulars.  (Exh. H).  Count 1 is identified as having occurred at 35 Park Avenue, and Count 2 is identified as having occurred at the Suffern Police Department.  (Id.).

In October 2009, the Rockland County Court held a combined Dunaway/Huntley hearing.  In an oral decision on October 28, 2009, the court stated:

> This entire case has proven to be very disturbing to this Court . . . . I reviewed the grand jury minutes . . . and I compared them with the testimony of the officers before the court, and I note there are substantial differences.  Differences upon which this court made a decision on the case when I found that the grand jury minutes were sufficient to establish the reasonableness to charge this defendant, and I now find myself confronted with what I used in front of the court to make that decision at some point in time became vastly different, which is deeply troubling to this court that testimony could change so drastically from the grand jury presentation to the presentation made to this court.  I may reconsider my decision on the grand jury minutes when I now read testimony put forward

---

[3]  Unless otherwise indicated, the information within this section is gleaned from the instant petition (Dkt. 13) and respondent's Memorandum of Law and Exhibits ("Resp. Opp.") (Dkt. 27).

[4]  Hereinafter, all citations to "Exh. ___" refer to exhibits collected in Respondent's Record of Exhibits.  (Dkt. 27.)

before this court by the police officers and compare them to the grand jury
minutes of the police officers, and I, frankly, am disturbed that I even have
to do that to be honest.  So at this point in time I am going to set this
matter down for trial, and we will go forward with the trial *unless I
reconsider* my original ruling on the grand jury minutes.

(Exh. A at 13-14) (emphasis added).  Ultimately, however, the court did not change its ruling

with regard to the validity of the indictment.  (Id.).

On November 6, 2009, the trial court granted defendant's motion to suppress threats he

made to Ms. Read while in police custody after his arrest but before Miranda warnings were

administered.  On June 22, 2010, the Second Department reversed that order.  People v. Read, 74

A.D.3d 1245, 1246, 904 N.Y.S.2d 147, 148-49 (2010).

B.  Evidence at Trial

On August 30, 2006, Justice Victor J. Alfieri, Jr., Town of Clarkstown Justice Court,

issued a three-year order of protection directing petitioner to "[r]efrain from assault, stalking,

harassment, menacing, reckless endangerment, disorderly conduct, intimidation, threats or any

criminal offense" against Michelle Surdak Read.  (Exh. I) (Tr. 8/12/10: 40)[5].

On the evening of April 27, 2009, Ms. Read called 911 several times to complain about

an incident involving petitioner.  (Tr. 8/12/10: 153-54; Tr. 8/13/10: 4, 10).  Police officers

Michael Lourenso and James Giannettino arrived at the apartment Ms. Read shared with

petitioner at 35 Park Avenue and were later joined by Sergeant John Gloede.  (Tr. 8/13/10: 8-

16).  Upon arrival, the officers observed petitioner shouting obscenities at Ms. Read, blaming her

for his forthcoming incarceration, and threatening to kill her when he got out of jail.  (Tr.

8/12/10: 50-52, 57-58; Tr. 8/13/10: 13-15).  After one of the patrol officers ascertained that the

---

[5]  Hereinafter, all citations to "Tr. ___" refer to the state court transcript.  (Dkt. 28).

2006 order of protection remained in effect, petitioner was arrested.  (Tr. 8/12/10: 54-58; Tr.

8/13/10: 15-17).   During the course of the arrest, petitioner continued to threaten Michelle and

to shout angrily at her.  (Tr. 8/12/10: 60-63; Tr. 8/13/10: 17, 20).  The police took petitioner to

the police station, where Ms. Read later arrived to complete a supporting deposition.  (Tr.

8/12/10: 63, 66-67, 84; Tr. 8/13/10: 18-19).  Although confined to a cell, petitioner continued to

scream at Ms. Read and threatened to kill her upon his release.  (Tr. 8/12/10: 68-69, 82-84, 90,

164-65; Tr. 8/13/10: 19).

C.  Verdict and Sentence

On August 17, 2010, the jury sent a note indicating that they had reached a unanimous

verdict on Count 2 but were deadlocked on Count 1.  (Tr. 8/17/10: 15).  The prosecution agreed

to dismiss the deadlocked count if the jury had reached a guilty verdict on Count 2.  (Tr. 8/17/10:

16-18).  The jury then announced that it found petitioner guilty of Count 2, relating to the

incident at the police station.  (Tr. 8/13/10: 9; Tr. 8/17/10: 20-24).  The court dismissed Count 1

as agreed.  (Tr. 8/17/10: 20-24).

Petitioner was sentenced on December 15, 2010.[6]  Taking note of petitioner's 22 prior

criminal convictions and his "long history of domestic violence," the court sentenced petitioner

to an indeterminate term of two to four years, to run consecutive to the three-and-a-half to seven

year term imposed in petitioner's other case.  (Tr. 12/15/10: 49).

D.  Petitioner's Purported § 440 Motion

Petitioner maintains that "[o]n October 25, 2010, petitioner has submitted to the . . .

---

[6] As noted elsewhere, n.2 *supra*, petitioner had by then sustained additional convictions,
following a second jury trial, relating to a July 31, 2008 domestic violence incident which also
involved Michelle Read.

Rockland County Supreme Court . . . a motion under CPL 440.10." (Dkt. 13-2 at 1). He provides a copy of letter dated October 25, 2010 from the trial judge's law secretary which states: "I am returning your recently-submitted papers to you. In addition to the fact that your papers are deficient and the motion premature (you have not yet been sentenced), Judge Nelson will not entertain any pro se motions while you are represented by counsel." (Dkt. 13-2 at 2). Petitioner submits this letter – but not the underlying (but rejected for filing) § 440.10 motion – "to show diligent effort" and to demonstrate that "[a]ll issues raised herin [sic] Habeas Corpus petition was raised to this court." (Id. at 1). The law secretary's letter does not specify whether it relates to a § 440.10 motion or some other motion entirely. Petitioner's letter to your Honor dated July 26, 2013 asks, "would it be required for me to [exhaust] this with going [through] motions such as § 440.10 CPL state motion. The county will reject this as they did in the past." (Dkt. 11 at 2). Petitioner resubmitted the October 25, 2010 letter, accompanied by his affirmation indicating that the letter refers to a § 440 motion, in March 2015. (Dkt. 45). Petitioner has also submitted copies of correspondence addressed to the Rockland County Supreme Court requesting a copy of his § 440 motion, and has asked this Court to expand the record to include the motion. (Dkt. 44, 46 at 2-4). Petitioner has also submitted pages from Rockland County Court dockets relating to Indictments 424/08 and 261/09, as well as one page of the federal court docket in this case. (Dkt. 46). None of these documents establish whether petitioner in fact filed, or attempted to file, a § 440.10 motion, nor do they shed light on what claims may have been presented therein.

There is no indication that petitioner sought any form of relief from the Appellate Division with respect to any such motion.

E.  <u>Direct Appeal</u>

-5-

Petitioner, through counsel, timely appealed both of his convictions to the Appellate Division, Second Department.  As pertinent to the instant petition, petitioner presented the following claims: (1) the court erred in not delivering a missing witness charge to the jury; (2) the prosecution failed to disclose grand jury testimony to petitioner; and (3) trial counsel was ineffective for failing to demand disclosure of grand jury testimony (Exh. A).[7]

In conjunction with the appeal, petitioner's counsel moved for production of the grand jury minutes.  On November 30, 2011, the appellate court granted the motion only to the extent that the District Attorney was directed to submit the grand jury minutes to the court for in camera review.  (Exh. A at 15-16).

By Decision and Order dated July 11, 2012, the Second Department affirmed petitioner's conviction.  People v. Read, 97 A.D.3d 702, 947 N.Y.S.2d 614 (2d Dep't 2012).  As pertinent to the instant petition, the Appellate Division held:

> On appeal, the defendant contends that the trial court erred during both trials in denying his request for a missing witness charge with respect to his wife, who did not testify in either trial. . . . [T]he trial court properly denied the defendant's request in both instances, as the record reflects that his wife was not under the People's control (see People v Monroe, 49 AD3d 900, 901 [2008]; People v Royster, 18 AD3d 375, 375-376 [2005]; People v Coleman, 306 AD2d 941, 942 [2003]).
> \* \* \* \* \* \* \* \* \*
> The defendant's contention that reversal of his conviction under indictment No. 261/09 is warranted because the People allegedly failed to turn over certain material pursuant to People v Rosario (9 NY2d 286 [1961], cert denied 368 US

---

[7]  By letter dated February 18, 2014, petitioner submitted a copy of a document styled "Supplimental Breif" [sic], bearing the caption of his direct appeal; petitioner's letter describes this document as "tangible evidence of petitioner's lay-person efforts to give a supplimentale [sic] brief to the appellant [sic] court, as well as appellants attorney."  (Dkt. 31.)  There is no indication that this document was actually submitted to or considered by the appellate court.  Even if it was properly filed in connection with petitioner's direct appeal, however, the document could not be construed as having exhausted any additional claims, because no corresponding leave application was submitted to the New York Court of Appeals.

866 [1961]) is unpreserved for appellate review (see People v Kelley, 73 AD3d
809, 810 [2010]; People v Seaton, 45 AD3d 875, 876 [2007]).  In any event, the
record reflects that the material was in fact provided to the defendant's trial
counsel.
Lastly, the defendant's contention that he received ineffective assistance of
counsel under the federal constitutional standard (see Strickland v Washington,
466 US 668 [1984]) with respect to the trial under indictment No. 261/09 is
without merit.

People v. Read, 97 A.D.3d at 703-04.

Petitioner, through counsel, timely submitted a leave application to the New York Court

of Appeals.  As pertinent to the instant petition, the leave application presented a single issue:

whether the trial court erred in denying defendant a missing witness charge with regard to

Michelle Read.  (Exh. E at 9-10).  The court denied leave on September 28, 2012.  People v.

Read, 19 N.Y.3d 1028, 978 N.E.2d 113 (2012).  Petitioner did not seek a writ of *certiorari* to the

United States Supreme Court.

F.  Habeas Petition

### 1.  Initial Petition

Petitioner timely[8] filed his initial petition for a writ of habeas corpus on May 29, 2013.

(Dkt. 1).  On July 12, 2013, your Honor – noting that petitioner's submission was approximately

500 pages long and did not comply with Rule 2 of the Rules Governing Section 2254 Cases –

directed petitioner to file an amended petition in which he must "succinctly and clearly state

each of his grounds for relief, and . . . detail what steps he has taken to exhaust them."  (Dkt. 9 at

2, 4).  This Court's July 12, 2013 Order To Amend attached a printed Amended Petition Under

28 U.S.C. § 2254 form, which petitioner was directed to complete.

### 2.  Amended Petition

_____

[8]  See 28 U.S.C. § 2244(d)(1).

-7-

Petitioner filed his Amended Petition on September 5, 2013.  (Dkt. 13.)  The petition includes printed Amended Petition form as well as voluminous attachments petitioner has identified as Parts 1, 2 and 3.  Due to ECF space limitations, petitioner's attachments appear on the docket as 12 separate exhibits.[9]  Including the attachments, the amended petition is approximately 552 pages in length.  In addition to his seemingly comprehensive amended petition, and as detailed below, petitioner has continued to submit purported evidence and other materials to this Court on a piecemeal basis (Dkts. 14, 31, 32, 44, 45, 46, 47, 49, 52), even after being directed not to do so without leave of the court.  (Dkt. 33.)  Petitioner's most recent such unsolicited submission is dated September 17, 2015 and was docketed on September 23, 2015. (Dkt. 51.)

Interpretation of this massive petition presents challenges.  Although petitioner's amended petition is in superficial compliance with this Court's July 13, 2013 Order to Amend, in substance petitioner has failed to "succinctly and clearly state each of his grounds for relief, and . . . detail what steps he has taken to exhaust them."  (Dkt. 9 at 4).  Although petitioner completed the pre-printed Amended Petition form as directed, the form is unhelpful because petitioner did not complete it accurately.[10]  In some instances petitioner's submissions do not differentiate

---

[9] Petitioner's attachments appear on the docket as follows:

"The Restraining Order Part 1" (Dkt. 13-1 through 13-9) (hereinafter "Part 1");

"The Restraining Order Part 2" (Dkt. 13-10) (hereinafter "Part 2"); and

"Missing Witness Charge Petitioner's Petition Part 3" (Dkt. 13-11 through 13-12) (hereinafter "Part 3").

[10] Petitioner's list of the "Grounds raised" on appeal in response to Questions 9(f) and 9(g)(6) on the printed Amended Petition form is grossly inaccurate.  Given petitioner's *pro se* status, the Court draws no conclusion as to whether petitioner deliberately attempted to mislead

between his two pending petitions or between the two underlying criminal trials.   As a whole, petitioner's submissions are prolix, rambling, and repetitive and are notable for their lack of structure, indiscriminate insertion of exhibits, and conclusory allegations of wrongdoing.

Notwithstanding these challenges, the Court has undertaken a careful review of petitioner's submissions, and reads the petition as seeking habeas review of the following claims:

> 1) the prosecution improperly withheld material from petitioner that was discoverable under People v. Rosario, 9 N.Y.2d 286 (1961);
>
> (2) petitioner's conviction was based on false evidence and perjured testimony;
>
> (3) the order of protection that petitioner was convicted of violating was invalid;
>
> (4) the court erred in denying petitioner's request for a missing witness charge as to the victim;
>
> (5) trial counsel was ineffective for failing to raise the aforementioned claims; and
>
> (6) appellate counsel was ineffective for failing to assert that petitioner's conviction was based on false testimony and that the order of protection was invalid.

G. Post-Petition Proceedings

Petitioner filed an "Acknowledgment of Appearance, and Request for Extension of Time by Attorney" letter in December 2013, imprecisely docketed as a "Letter Motion for Extension of Time." (Dkt. 24). In that letter, petitioner expressed concern that the Rockland County District Attorney would "redact portions/ or fail to enclose every proceeding entailed related to both indictment 424-08 and 261-2009." (Id.). Petitioner specifically requested ten documents and stated that the "true potential of his merits for his habeas petition relies on the disclosure of

_____

the Court concerning what claims were exhausted on direct appeal.

all related transcripts from various hearings." (Id. at 2). Among the ten documents petitioner

requested were the grand jury hearing transcripts of arresting officers Lourenso and Giannettino.

(Id. at 3).[11]

Respondent's answer was timely filed on February 11, 2014. (Dkt. 27). On February 20,

2014, petitioner filed a document entitled "Submission of Evidence" stating that he "took [the]

liberty to enclose tangible evidence of petitioner's lay-person efforts to give a [supplemental]

brief to the appella[te] court," and that "the sealed grand jury minutes were indeed mailed" to the

Second Department.[12] (Dkt. 31)

Petitioner filed an opposition to Respondent's answer on March 3, 2014. (Dkt. 32). This

filing states that petitioner will "rely on [his] amended complaint for it has been properly stated"

---

[11] Petitioner attached a number of documents to this letter, including: a November 9, 2010 letter from the FBI in response to a FOIA request submitted by petitioner; an article from the Rockland Journal News reporting the resignation of Officer Michael Lourenso; a response from the State Attorney General to information petitioner provided to the Public Integrity Bureau in a 2010 complaint; statements from Rockland County Justice Court Chief Clerk Candyce Draper certifying the authenticity of unnamed copied documents in petitioner's case; what appears to be a cover page of a December 18, 2008 transcript from a Rockland Supreme Court hearing in Indictment Nos. 460/08 and 424/08; and what appears to be a log of appearances at the Haverstraw Town Court. (Dkt. 24)

[12] The submission includes a November 7, 2011 letter from the Rockland County District Attorney Appeals Bureau to the Second Department enclosing sealed grand jury minutes in Indictment No. 424-08, which petitioner received without the enclosure; April 19, 2011 and March 21, 2011 Decision and Orders granting leave to prosecute appeals of Indictment No. 09-261, which is the subject of the instant petition, as well as Indictment No. 424-08, assigning appellate counsel, ordering that the trial court stenographer file transcripts of related hearings, and unsealing any sealed files to allow assigned counsel access to the record; a supplemental brief dated December 31, 2011 to the Appellate Division; a letter dated December 22, 2011 to assigned appellate counsel John Lewis requesting that he send petitioner trial minutes, raising concerns about the lights accidentally being shut off in the court room during his trial for Indictment No. 424-08 and about the validity of the restraining order, offering to write a supplemental brief, and requesting records from the Dunaway and Huntley hearings; and a January 9, 2012 letter to the Second Department regarding indictment number 424-08. (Dkt. 31).

and "all material evidence supporting petitioner's claims [are] provided in [the] habeas corpus petition." (Id. at 1, 5). Petitioner attaches a series of documents, the first eleven of which are enumerated in petitioner's reply with explanations of their relevance to the instant petition.[13]

Petitioner mailed a supplemental reply dated March 4, 2014, which this Court docketed on March 10, 2014 with a memo stating that petitioner's habeas application was fully submitted and directing the parties not to file additional briefing without leave of the court. (Dkt. 33). In that reply, petitioner attaches the June 22, 2010 Appellate Division decision reversing the County Court's granting of defendant's motion to suppress. Petitioner states that "the only two counts indictments I have been charged for is clearly preserved by the New York State Court of Appeals Second Division." He asserts that "In June 2010, this court N.Y.S.C.A. . . . reversed this indictment." (Id. at 1).

H.  Petitioner's Additional Communications With the Court

---

[13]  The attachments include (1) a Suffern Police Department Dispatch Report from the date of petitioner's arrest; (2) the 8/30/06 Order of Protection; (3) a Ramapo Valley Ambulance report summarizing petitioner's ambulance trip from the police station; (4) an April 28, 2009 Omnibus Notice of the evidence that the People intend to offer at trial filed by the Rockland County District Attorney; (5) a June 12, 2009 certificate of indictment; (6) a November 26, 2012 Case Report filed by the Suffern Police Department; (7) a Divestiture to Superior Court form with copies of Felony and Misdemeanor Information documents, an arrest report, a domestic incident report, a partial copy of a stay away temporary order of protection, and petitioner's criminal disposition report; (8) a letter from the Village of Suffern Justice Court to petitioner, enclosing a copy of the Divestiture to Superior Court listing the documents forwarded to the County Court, stating the time of arraignment and enclosing a copy of the charges; Affidavits and a Declaration in Support of Defendant's Motion for Summary Judgment in Read v. Town of Suffern Police Dep't, 10 Civ. 9042 from (9) David Tarantino, (10) Michael Lourenso, and (11) James Giannettino; (12) a newspaper article regarding Officer Lourenso's resignation; (13) a letter from the Justice Court. Village of Suffern, responding to petitioner's request for various documents; (14) the domestic incident report from this case; (15) Ms. Read's supporting deposition; (16) the arrest report; and (17) a letter from petitioner's pro bono counsel in Read v. Town of Suffern Police Dep't, 10 Civ. 9042 requesting materials and a meeting with petitioner about that case.

Petitioner has submitted additional materials and requests to the Court, both before and after being directed not to do so without leave. On March 18, 2014, the Court denied a letter-request dated March 13, 2014 entitled "petitioner request for production of trial transcripts," requesting additional records and discovery. (Dkt. 34). On May 9, 2014, the Court denied petitioner's letter-request entitled "Request to submit documents from parol." (Dkt. 35). On September 17, 2015, petitioner filed a document entitled "Discovery of Newly Discovered Evidence," to which he attaches a September 16, 2010 Decision from the County Court authorizing defense counsel to employ an investigator in Indictment No. 424-08, the November 18, 2009 notice of appeal of the Rockland County Court's Decision and Order granting defendant's motion to suppress, and that October 28, 2009 hearing decision. (Dkt. 49). On September 23, 2015, petitioner filed the transcript from his sentencing, along with a letter stating, "There may be tangible evidence. My preserving my constitutional rights. This came to me as newly discovered evidence. I wish to protect any rights that were not documented to this Court." (Dkt. 51). Petitioner has also telephoned chambers relentlessly and has written to various District Court personnel seeking updates on the status of his petitions. (Dkt. 36, 37, 39, 43).

Petitioner filed with the Court of Appeals petitions for writs of mandamus with regard to both habeas petitions; on September 21, 2015, the Second Circuit denied petitioner's mandamus petitions without prejudice to renewal if the District Court fails to take action within thirty days. (Dkt. 50).

I. Related Cases

In addition to his other habeas petition, petitioner has filed several additional actions in this district relating to his arrests and convictions. See, e.g., Read v. Town of Suffern Police

Dept., 10 Civ. 9042 (JPO);  Read v. Zugibe, 10 Civ. 8428 (WHP); Read v. Rockland County Jail RCCF Official Personels Responsible Per Evidence Certified to CT, 10 Civ. 9018 (LAP);  Read v. Zugibe, 11 Civ. 1771 (LAP).  Petitioner has submitted numerous documents which appear to relate to these other cases.

## III.  APPLICABLE LAW

"Habeas review is an extraordinary remedy."  Bousley v. United States, 523 U.S. 614, 621 (1998) (citing Reed v. Farley, 512 U.S. 339, 354 (1994)).  Before a federal district court may review the merits of a state criminal judgment in a habeas corpus action, the court must first determine whether the petitioner has complied with the procedural requirements set forth in 28 U.S.C. §§ 2244 and 2254.  If there has been procedural compliance with these statutes, the court must then determine the appropriate standard of review applicable to the petitioner's claim(s) in accordance with  § 2254(d).  The procedural and substantive standards applicable to habeas review, which were substantially modified by the Anti-Terrorism and Effective Death Penalty Act of 1996 ("AEDPA"), are summarized below.

A.  Timeliness

The AEDPA established a one-year statute of limitations for the filing of a habeas corpus petition seeking relief from a state court conviction.  See 28 U.S.C. § 2244(d)(1).  The one-year limitation period runs from the latest of:

(A) the date on which the judgment became final by the conclusion of direct review or the expiration of the time for seeking such review;

(B) the date on which the impediment to filing an application created by State action in violation of the Constitution or laws of the United States is removed, if the applicant was prevented from filing by such State action;

(C) the date on which the constitutional right asserted was initially recognized by the Supreme Court, if the right has been newly recognized by the Supreme Court and made retroactively applicable to cases on collateral review; or

(D) the date on which the factual predicate of the claim or claims presented could have

-13-

been discovered through the exercise of due diligence.

Id.

The AEDPA's statute of limitations is tolled during the pendency of a properly filed application for state post-conviction relief, or other collateral review, of a claim raised in the petition. See id. § 2244(d)(2). The one-year limitation period is also subject to equitable tolling, which is warranted when a petitioner has shown "'(1) that he has been pursuing his rights diligently, and (2) that some extraordinary circumstance stood in his way' and prevented timely filing." Holland v. Florida, 560 U.S. 631, 649 (2010) (quoting Pace v. DiGuglielmo, 544 U.S. 408, 418 (2005)). "The term 'extraordinary' refers not to the uniqueness of a party's circumstances, but rather to the severity of the obstacle impeding compliance with a limitations period." Harper v. Ercole, 648 F.3d 132, 137 (2d Cir. 2011). "To secure equitable tolling, it is not enough for a party to show that he experienced extraordinary circumstances. He must further demonstrate that those circumstances caused him to miss the original filing deadline." Id. Additionally, "[c]onsistent with the maxim that equity aids the vigilant, a petitioner seeking equitable tolling of AEDPA's limitations period must demonstrate that he acted with reasonable diligence throughout the period he seeks to toll." Id. at 138 (internal quotation marks and citations omitted); see also Valverde v. Stinson, 224 F.3d 129, 134 (2d Cir. 2000) (A petitioner seeking equitable tolling must "demonstrate a causal relationship between the extraordinary circumstances on which the claim for equitable tolling rests and the lateness of his filing, a demonstration that cannot be made if the petitioner, acting with reasonable diligence, could have filed on time notwithstanding the extraordinary circumstances.").

B. Procedural Default

Federal habeas corpus review of a state court's denial of a state prisoner's federal

constitutional claim is barred if the state court's decision rests on an independent and adequate

state procedural ground, unless the petitioner can demonstrate cause for the procedural default

and actual prejudice resulting from the alleged constitutional violation, or that he is actually

innocent.  See Bousley, 523 U.S. at 622; Coleman v. Thompson, 501 U.S. 722, 750 (1991).  See

also Lee v. Kemna, 534 U.S. 362, 375 (2002); Dunham v. Travis, 313 F.3d 724, 729 (2d Cir.

2002).  A procedural ground is "independent" if "the last state court rendering a judgment in the

case clearly and expressly states that its judgment rests on a state procedural bar."  See Harris,

489 U.S. at 263 (internal quotation marks omitted).  A procedural bar is "adequate" if it is

"based on a rule that is firmly established and regularly followed by the state in question."

Monroe v. Kuhlman, 433 F.3d 236, 241 (2d Cir. 2006) (internal quotation and citation omitted).

In certain limited circumstances, however, "even firmly established and regularly

followed state rules will not foreclose review of a federal claim if the application of the rule in a

particular case is 'exorbitant.'"  See Garvey v. Duncan, 485 F.3d 709, 713-14 (2d Cir. 2007)

(citing Lee, 534 U.S. at 376).  To this end, the Second Circuit has set forth the following

"guideposts" for evaluating the adequacy of the state procedural bar in the context of "the

specific circumstances presented in the case, an inquiry that includes an evaluation of the

asserted state interest in applying the procedural rule in such circumstances":

> (1) whether the alleged procedural violation was actually relied on in the trial
> court, and whether perfect compliance with the state rule would have changed the
> trial court's decision; (2) whether state caselaw indicated that compliance with the
> rule was demanded in the specific circumstances presented; and (3) whether
> petitioner had "substantially complied" with the rule given "the realities of trial,"
> and, therefore, whether demanding perfect compliance with the rule would serve
> a legitimate governmental interest.

Cotto v. Herbert, 331 F.3d 217, 240 (2d Cir. 2003) (quoting Lee, 534 U.S. at 381-85).

C.  Exhaustion

A federal court may not grant habeas relief unless the petitioner has first exhausted his claims in state court. O'Sullivan v. Boerckel, 526 U.S. 838, 842 (1999); see 28 U.S.C. § 2254(b)(1) ("[a]n application for a writ of habeas corpus on behalf of a person in custody pursuant to the judgment of a State court shall not be granted unless it appears that – (A) the applicant has exhausted the remedies available in the courts of the State; or (B)(I) there is an absence of available corrective process; or (ii) circumstances exist that render such process ineffective to protect the rights of the applicant"); id. § 2254(c) (the petitioner "shall not be deemed to have exhausted the remedies available in the courts of the State . . . if he has the right under the law of the State to raise, by any available procedure, the question presented"). The exhaustion requirement promotes interests in comity and federalism by demanding that state courts have the first opportunity to decide a petitioner's claims. Rose v. Lundy, 455 U.S. 509, 518-19 (1982).

To exhaust a federal claim, the petitioner must have "fairly present[ed] his claim in each appropriate state court (including a state supreme court with powers of discretionary review), thereby alerting that court to the federal nature of the claim," and thus "giving the State the opportunity to pass upon and correct alleged violations of its prisoners' federal rights." Baldwin v. Reese, 541 U.S. 27, 29 (2004) (internal quotation marks and citations omitted). "Because non-constitutional claims are not cognizable in federal habeas corpus proceedings, a habeas petition must put state courts on notice that they are to decide federal constitutional claims." Petrucelli v. Coombe, 735 F.2d 684, 687 (2d Cir. 1984) (citing Smith v. Phillips, 455 U.S. 209, 221 (1982)). Such notice requires that the petitioner "apprise the highest state court of both the factual and legal premises of the federal claims ultimately asserted in the habeas petition." Galdamez v. Keane, 394 F.3d 68, 73 (2d Cir. 2005) (internal citation omitted). In doing so, a

petitioner need not cite chapter and verse of the Constitution; there are a number of other ways in which a petitioner may fairly apprise the state court of the constitutional nature of his claim, including: "a) reliance on pertinent federal cases employing constitutional analysis, b) reliance on state cases employing constitutional analysis in like fact situations, c) assertion of the claim in terms so particular as to call to mind a specific right protected by the Constitution, and d) allegation of a pattern of facts that is well within the mainstream of constitutional litigation." Carvajal v. Artus, 633 F.3d 95, 104 (2d Cir. 2011). A habeas petitioner who fails to meet a state's requirements to exhaust a claim will be barred from asserting that claim in federal court. Edwards v. Carpenter, 529 U.S. 446, 451 (2000).

However, "[f]or exhaustion purposes, a federal habeas court need not require that a federal claim be presented to a state court if it is clear that the state court would hold the claim procedurally barred." Reyes v. Keane, 118 F.3d 136, 139 (2d Cir. 1997) (internal quotation omitted). "In such a case, a petitioner no longer has 'remedies available in the courts of the State' within the meaning of 28 U.S.C. § 2254(b)." Grey v. Hoke, 933 F.2d 117, 120 (2d Cir. 1991). Such a procedurally barred claim may be deemed exhausted by a federal habeas court. See, e.g., Reyes, 118 F.3d at 139. However, absent a showing of either "cause for the procedural default and prejudice attributable thereto," Harris v. Reed, 489 U.S. 255, 262 (1989), or "actual innocence," Schlup v. Delo, 513 U.S. 298 (1995), the petitioner's claim will remain unreviewable by a federal court.

When confronted with a "mixed" petition containing both exhausted and unexhausted claims, a federal court has the following options: (1) it may stay the proceedings and hold the petition in abeyance in order to permit the petitioner to return to state court and exhaust the unexhausted claim(s); (2) it may permit the petitioner to amend the petition and excise any

unexhausted claim; (3) it may dismiss without prejudice the entire petition; or (4) it may review and deny a mixed petition containing both exhausted and unexhausted claims, if those unexhausted claims are "plainly meritless." See 28 U.S.C. § 2254(b)(2); Rhines v. Weber, 544 U.S. 269, 277-78 (2005); Zarvela v. Artuz, 254 F.3d 374, 378-82 (2d Cir. 2001); Reyes v. Morrissey, No. 07 Civ. 2539, 2010 WL 2034531, at *9 (S.D.N.Y. Apr. 21, 2010) (Report and Recommendation), *adopted by* 2010 WL 2034527 (S.D.N.Y. May 19, 2010).[14]

D.  Standard of Review

"[I]t is not the province of a federal habeas court to reexamine state-court determinations on state-law questions.  In conducting habeas review, a federal court is limited to deciding whether a conviction violated the Constitution, laws, or treaties of the United States." Estelle v. McGuire, 502 U.S. 62, 68 (1991). See 28 U.S.C. § 2254(a).  When reviewing petitions filed subsequent to the AEDPA's effective date, a federal court may not grant habeas relief unless the petitioner establishes that the state court's decision "was contrary to, or involved an unreasonable application of, clearly established Federal law, as determined by the Supreme Court of the United States" or "was based on an unreasonable determination of the facts in light of the evidence presented in the State court proceeding." 28 U.S.C. § 2254(d)(1), (d)(2).  The AEDPA deferential standard of review will be triggered if the petitioner's claim "was adjudicated on the merits in State court proceedings." 28 U.S.C. § 2254(d); see Bell v. Miller, 500 F.3d 149, 154-55 (2d Cir. 2007).  "For the purposes of AEDPA deference, a state court 'adjudicate[s]' a state prisoner's federal claim on the merits when it (1) disposes of the claim 'on the merits,' and (2) reduces its disposition to judgment." Sellan v. Kuhlman, 261 F.3d 303, 312 (2d Cir. 2001).

---

[14]  Copies of all unpublished cases available only in electronic form cited herein have been mailed to petitioner.  See Lebron v. Sanders, 557 F.3d 76, 78 (2d Cir. 2009).

A state court's decision is "contrary to" clearly established Federal law if (1) "the state court applies a rule that contradicts the governing law set forth [by the Supreme Court of the United States]" or (2) "the state court confronts a set of facts that are materially indistinguishable from a decision of [the Supreme Court] and nevertheless arrives at a result different from [Supreme Court] precedent." Williams v. Taylor, 529 U.S. 362, 405-06 (2000). "Clearly established Federal law for purposes of § 2254(d)(1) includes only the holdings, as opposed to the dicta, of [Supreme Court] decisions. And an 'unreasonable application of' those holdings must be objectively unreasonable, not merely wrong; even 'clear error' will not suffice." White v. Woodall, 134 S. Ct. 1697, 1702 (2014) (internal quotation marks and citations omitted). "The critical point is that relief is available under § 2254(d)(1)'s unreasonable application clause if, and only if, it is so obvious that a clearly established rule applies to a given set of facts that there could be no 'fairminded disagreement' on the question." Id. at 1706-07 (quoting Harrington v. Richter, 131 S. Ct. 770, 786-87 (2011)) ("As a condition for obtaining habeas corpus from a federal court, a state prisoner must show that the state court's ruling on the claim being presented in federal court was so lacking in justification that there was an error well understood and comprehended in existing law beyond any possibility for fairminded disagreement.").

Finally, under the AEDPA, the factual findings of state courts are presumed to be correct. See 28 U.S.C. §2254(e)(1); see also Nelson v. Walker, 121 F.3d 828, 833 (2d Cir. 1997). The petitioner must rebut this presumption by "clear and convincing evidence." 28 U.S.C. §2254(e)(1).

## IV.  ANALYSIS

A.  Claim One: Rosario Violation

Petitioner's first habeas claim argues that "the people failed to turn over grand jury

minutes as Rosario material to the defense, a per se reversible error." (Dkt. 13-1 at 8-11; Exh. A at 28). Petitioner specifically points to the prosecution's failure to produce the grand jury testimony of arresting Officer Lourenso as a violation of People v. Rosario, 9 N.Y.2d 286 (1961). He claims that "the [GRAND JURY TETSIMONY BY Ptl. M. Lourenso Remains missing from the record]." (Dkt. 13-1 at 33). Petitioner urges the court to "acknowledge Officer M. Lourenso's Grand Jury testimony was never provided by the prosecution. This was not mentioned by either lawyer's [sic]. This officer was the arresting officer he had given testimony that was not provided and constitutions [sic] as a violation of Rozario [sic] materials." (Id. at 38). In substance, this claim was presented to the Appellate Division as Point II of petitioner's brief on direct appeal. (Exh. A at 28-31.)

This claim is unexhausted. Although petitioner claimed a Rosario violation at the first stage of his direct appeal, petitioner abandoned this claim in his leave application to the New York Court of Appeals. See Daye v. Attorney General of N.Y., 696 F.2d 186, 190 n.3 (2d Cir. 1982) (en banc) (Exhaustion requires "presentation of the claim to the highest state court from which a decision can be had.").

Nevertheless, this claim may be "deemed exhausted" because it is now procedurally barred under state law.[15] See St. Helen v. Senkowski, 374 F.3d 181, 183 (2d Cir. 2004).

---

[15] The Appellate Division determined that this claim was unpreserved, suggesting an alternative basis for holding that the claim is barred on state procedural grounds:

> The defendant's contention that reversal of his conviction under indictment No. 261/09 is warranted because the People allegedly failed to turn over certain material pursuant to People v. Rosario (9 NY2d 286 [1961], cert denied 368 US 866 [1961]) is unpreserved for appellate review (see People v. Kelley, 72 AD3d 809, 810 [2010]; People v. Seaton, 45 Ad3d 875, 876 [2007]).

People v. Read, 97 A.D.3d at 703-04, 947 NYS2d 614. Because the state appellate court did not

Petitioner cannot return to state court to fully exhaust the <u>Rosario</u> claim because he has already made the one request for leave to appeal to which he is entitled.  <u>See</u> N.Y. Ct. Rules § 500.20(a)(2).  He is also precluded from raising this claim in a collateral proceeding because it could have been, and in fact was, raised on direct appeal to the Appellate Division.  <u>See</u> N.Y. Crim. Proc. Law § 440.10(2)(c).

Petitioner has not alleged that he is actually innocent or that the court's failure to consider the claims would result in a fundamental miscarriage of justice.  To the extent that petitioner claims ineffective assistance of counsel to demonstrate the cause necessary to overcome his failure to preserve the <u>Rosario</u> claim, that claim is unexhausted, as explained below.  <u>See</u> <u>Edwards v. Carpenter</u>, 529 U.S. 446, 452 (2000) ("[a] claim of ineffective assistance [generally must] be presented to the state courts as an independent claim before it may be used to establish cause for procedural default.").

For these reasons, I recommend that petitioner's <u>Rosario</u> claim be denied.[16]

B. <u>Claim Two: Petitioner Was Wrongfully Convicted Based on "False Evidence" or "Changed Testimony"</u>

Petitioner claims that "[p]eople's police witnesses changed testimony.  They are the complaining witnesses whom charged petitioner.  Petitioner was wrongfully convicted upon this false testimony.  Records in both appellants brief, and respondant [sic] brief state petitioner was

_____

specify the factual or legal basis for this conclusion, however, I do not analyze the adequacy of that procedural bar.

[16] Although I do not reach the merits of this claim, I note that <u>Rosario</u> violations are not ordinarily cognizable on habeas review.  <u>See, e.g.</u>, <u>Green v. Artuz</u>, 990 F. Supp. 267, 274 (S.D.N.Y. 1998) ("failure to turn over Rosario material is not a basis for habeas relief as the Rosario rule is purely one of . . . state law").

convicted for this testimony for what was fabricated at police station.  The only two counts were at residence of the petitioner.  Arrest information and others support location and original charge.  Counts at residence were dismissed.  Petitioner is unlawfully convicted by this use of changed/perjured testimony.  See attached part 1.  Enclosed." (Dkt. 13).

Petitioner claims that though he was convicted for violating the order of protection at the police station, he was only indicted for violating the order of protection from inside his apartment, before he arrived at the precinct.  He asserts that the "two counts of criminal contempt that [he] was arrested for" were "the threats over the phone, and the spontaneous statements in the presence of the arresting officers," not the threats at the police station.  (Dkt. 13-1 at 3).  Petitioner claims that later, however, "the testimony changed, meaning the police officers who testified for the people changed testimony stating that count two was at the police station on 4/27/2009." (Id. at 6).  According to petitioner, "the changed testimony pertained to the police station is perjured testimony that the jury was influenced to believe to be the second charge." (Id. at 27).

Petitioner's claim that his conviction was invalid because of "changed testimony" was not raised *in haec verba*[17] in state court.  However, applying the generous interpretation to which *pro se* petitioners are entitled, review of petitioner's briefing reveals that this claim amounts to a reprisal of petitioner's Rosario claim, discussed above.  In Part 1, which petitioner incorporates by reference into his claim that "[p]eople's police witnesses changed testimony," petitioner largely repeats that portion his Appellate Division brief which addressed the Rosario claim. (Dkt. 13-1 at 8-11; Exh. A at 28-31).  Essentially, petitioner argues here that because what he

---

[17] *Latin*, "in these words."

*suspects* would be revealed by production of the grand jury transcript (that the police officers testified to petitioner violating the order of protection before his arrest, not at the police station) does not comport with the evidence introduced at trial (that he violated the order of protection at the house and at the police station), his conviction is based on "changed testimony" and "false evidence." Petitioner's attempt to resurrect his unpreserved Rosario claim by repackaging it as a claim of "false evidence" fails. Petitioner has not properly stated a separate claim and for reasons stated in the Court's analysis of petitioner's Rosario claim above, this claim should be denied.[18]

C. Claim Three: Invalidity of Order of Protection

Next, petitioner contends that his contempt conviction was based on an invalid order of protection. In essence, petitioner contends that Clarkstown Justice Victor J. Alfieri Jr., identified as the signatory on the underlying August 30, 2006 order of protection, had been elevated to the state supreme court by that date, and that the order is a "nullity" as a result.[19] (Dkt. 13 at 7).

_____

[18] To the extent that petitioner states a freestanding "false evidence" claim, that claim is completely unexhausted and would potentially require dismissal of this petition as "mixed" under Rhines v. Weber, supra. Petitioner's counseled brief to the Appellate Division did not assert that his conviction was based on "false evidence" or "perjured testimony." The brief did allude to the trial judge's comments, at a pretrial hearing on October 28, 2009, concerning "great and disturbing differences between the testimony of prosecution witnesses before the grand jury, and the testimony of those witnesses at the pre-trial hearings," but only in connection with the Rosario claim, not a "false evidence" claim. (Exh. A at 31). Petitioner used the term "false evidence" in the (apparently unfiled) supplemental appellate brief described above at note 7. (Dkt. 31 at 8). No version of this claim was presented to the New York Court of Appeals.

[19] In his Amended Petition, petitioner states: "People's witness testified to the authenticity of order of protection. Stating defendant was present when Hon V. J. Alferi [sic] issued this order. However Hon. Alefieri [sic] was no longer town justice at time top was issued. He was elected to superior Ct. Justice. Signature was without jurisdiction and this order void. Respondance [sic] brief Exhibit # 1 pg. 40. People cited: counsel moved to dismiss, arguing that the top [temporary order of protection] was defective as well the line for prior crime was blank (8/16/10: 2-3). The top is a nullity do [sic] to a final disposition. See Part # 2 of petition."

This claim is unexhausted.

At trial, the chief court clerk, Candyce Draper, identified the order of protection to which petitioner objects as an "order of protection issued against David Read signed by Judge Victor Alfieri" and testified that she was present in court when the order was issued on August 30, 2006. (Tr. 8/12/10: 40-41). Defense counsel declined to cross examine Ms. Draper. (Tr. 8/12/10: 42). At the close of trial, defense counsel moved to dismiss the indictment, arguing that the order of protection was invalid because the prosecution had redacted a reference to petitioner's prior crime on the order. Defense argued that the order of protection "indicates that at the top line, it says, order of protection and the box is checked. And then in preprinted it has whereas the defendant has been convicted of, and in parentheses specified crime of violation that is blank. It is not present. Based on that, I would ask that your Honor find that this order of protection was not valid on the date of the incident." (Tr. 8/16/10: 2-3). The trial court denied the motion, and petitioner did not appeal on this ground.

The challenge petitioner now seeks to raise is entirely different, was not raised in state court at any level, and is therefore unexhausted. Nevertheless, the claim is "deemed exhausted"

---

Part 2 in turn includes numerous exhibits of uncertain significance. Among other things, petitioner attaches: (1) a 2008 "Notifications on Sealings" from Rockland County Court;" (2) a transcript excerpt from a hearing regarding Indictment No. 428-08, which is the subject of petitioner's other habeas petition; (3) a jail booking form relating to Indictment No. 428-08; (4) an April 20, 2006 order of protection from the Justice Court of the Town of Haverstraw; (5) a jail booking form from 2006; (6-7) copies of orders of protection from Clarkstown; (8 – 8D) Certificate of Conviction, Violation of Probation, Declaration of Delinquency, Order and Conditions of Probation, and Order to Convert Fine/Surcharge/Restitution Civil Judgment forms; (9) a Repository Inquiry; (10) a Good Behavior Allowance form; (11-12) D/V (Domestic Violence Information documents; (13) petitioner's 2008 jail booking form; (14) a Standard Local Jail Commitment Order; (15) a March 2008 Order to Produce from the Clarkstown Town Court Criminal Part; (16) another Good Behavior Allowance Form; (17) numerous reported cases from various New York State courts. (Dkt. 13-10).

because it is now procedurally barred under state law.  See St. Helen, 374 F.3d 181, 183.

Petitioner cannot again seek leave to appeal those claims in the Court of Appeals because he has

already made the one request for leave to appeal to which he is entitled.  See N.Y. Ct. Rules §

500.20(a)(2).  He is also precluded from raising this claim, which amounts to a facial challenge

to the underlying order of protection, in a collateral proceeding because it could have been raised

on direct appeal to the Appellate Division.  See N.Y. Crim. Proc. Law § 440.10(2)(c).

     Petitioner has not alleged that he is actually innocent or that the court's failure to

consider the claims would result in a fundamental miscarriage of justice.  I note that petitioner

claims that "appellant attorney was ineffective for not pushing the issue further.  Once he

became aware of the circumstances raised by the People's Brief on the issue of the deficient

order of protection.  Appellant attorney proved ineffective by not using this ammunition afforded

to him."  (Dkt. 13-10 at 4).  To the extent that petitioner is claiming ineffective assistance of

counsel as cause for his procedural default, see Edwards v. Carpenter, 529 U.S. 446, 452 (2000).

this claim is itself unexhausted.  Murray v. Carrier, 477 U.S. 478, 488-89 (1986) (exhaustion

doctrine "generally requires that a claim of ineffective assistance be presented to the state courts

as an independent claim before it may be used to establish cause for a procedural default.")

     Accordingly, petitioner's habeas claim regarding the validity of the order of protection

should be denied.[20]

D.  Claim Four: Denial of Missing Witness Charge

     Next, petitioner claims that the trial court erred in denying his request for a missing

---

[20] Although I do not reach the merits of this claim, I note that a "challenge to the validity
of [a] state-court-issued order of protection rests entirely on an interpretation of state law and is
therefore not cognizable in this Court."  Jean-Laurent v. Conway, No. 10 CV 346 (RJD), 2012
WL 3043158, at *5 (E.D.N.Y. July 25, 2012).

witness instruction as to Ms. Read.  This claim was presented to the state courts on direct appeal and was included in petitioner's leave application to the Court of Appeals.  However, this claim does not raise any federal constitutional issue which is cognizable on habeas review.

There is "no clearly established Supreme Court precedent requiring a trial court to instruct the jury with respect to a missing witness."  Morales v. Strack, No. 03-MISC-0066 (JBW), 2003 WL 21816963, at *4 (E.D.N.Y. July 3, 2003) aff'd, 116 F. App'x 293 (2d Cir. 2004).  Instead, the decision of whether to give a missing witness charge is committed to the sound discretion of the trial court.  Reid v. Senkowski, 961 F.2d 374, 377 (2d Cir.1992). Accordingly, "[a] trial court's decision to deliver a missing witness instruction, like any jury instruction, does not raise a constitutional issue and cannot serve as the basis for federal habeas relief unless the [decision] so infected the entire trial that the resulting conviction violated due process."  Watkins v. Perez, No. 05 Civ. 477 (GEL), 2007 WL 1344163, at *21 (S.D.N.Y. May 7, 2007) (citations omitted).

Here, the missing witness instruction claim was presented to the state courts purely as a matter of state law.  Although petitioner attempts to federalize this claim by citing 18 U.S.C. § 3144 – the material witness statute – that statute applies to the arrest and detention of material witnesses in federal proceedings and has no application to petitioner's state criminal trial. Petitioner did not present any alleged due process violation to the state court, nor has he done so here. Petitioner's missing witness charge claim should therefore be denied.

E.  Claim Five: Ineffective Assistance of Trial Counsel

Petitioner asserts that trial counsel was ineffective for failing to (1) argue that his conviction was based on false evidence; (2) preserve the Rosario claim; (3) argue that the order of protection was invalid based on the Judge's signature; and (4) present further evidence in

moving for a missing witness charge. (Dkt.13 at 10).  No ineffective assistance claim was

properly exhausted in state court.

### 1. Claims "Deemed Exhausted" But Procedurally Barred

Under New York's procedural rules, ineffective assistance of trial counsel claims based

on errors or omissions that appear on the trial record must be raised on direct appeal or they will

be deemed procedurally barred when raised collaterally.  <u>See</u> N. Y. Crim. P. L. § 440.10(2)(c)

(court "must deny motion . . . [when] sufficient facts appear on the record" to permit review on

direct appeal); <u>Sweet v. Benton</u>, 353 F.3d 135, 139 (2d Cir. 2003) (New York law requires a

state court to deny a motion to vacate a judgment based on a constitutional violation where

defendant unjustifiably failed to argue the constitutional violation on direct appeal despite a

sufficient record.").  Thus, record-based ineffective assistance claims not exhausted on direct

appeal will be "deemed exhausted" on habeas review because they are procedurally barred under

state law.  <u>See</u> <u>St. Helen</u>, 374 F.3d at 183.

The first three prongs of petitioner's ineffective assistance of counsel claim, based on

alleged omissions by defense counsel during trial, are procedurally barred on this basis.  To the

extent that petitioner contends his attorney was ineffective because he failed to argue "false

evidence" or that the order of protection was invalid, these record-based claims clearly could

have been, but were not, presented to the state courts as part of petitioner's direct appeal.

Petitioner's claim that his attorney erred by failing to demand <u>Rosario</u> material *was* raised on

direct appeal, and was therefore entertained and decided by the appellate court.  <u>People v. Read</u>,

97 A.D.3d at 704.  However, petitioner abandoned this claim by failing to include it in his leave

application to the New York Court of Appeals.  Petitioner has not alleged the cause and

prejudice necessary to overcome his forfeiture, nor has he alleged that he is actually innocent or

that the court's failure to consider the claims would result in a fundamental miscarriage of justice. Accordingly, habeas review is not available as to these claims.

### 2. "Plainly Meritless" Claim

Petitioner can also be read to assert ineffective assistance based on his attorney's failure to proffer a defense investigator's report in support of his request for a missing witness charge.[21] This prong of petitioner's ineffective assistance claim is also unexhausted. However, because any such report is not part of the trial record, this claim arguably could have been, but was not, raised in a collateral motion pursuant to N.Y. Crim. P. L. § 440.10. Thus, petitioner still has a remedy available in state court, and the claim cannot be "deemed exhausted." This claim can, however, be dismissed under 28 U.S.C. § 2254(b)(2) as it is plainly meritless. See Rhines, 544 U.S. at 277-78.

In order to establish his claim of ineffective assistance of trial counsel, petitioner must demonstrate (1) that his attorney's performance "fell below an objective standard of reasonableness" and (2) that there is a "reasonable probability" that, but for counsel's error, "the result of the proceeding would have been different." Strickland v. Washington, 466 U.S. 668, 694 (1984). "The *Strickland* standard is rigorous, and the great majority of habeas petitions that allege constitutionally ineffective counsel founder on that standard." Lindstadt v. Keane, 239 F.3d 191, 199 (2d Cir. 2001). In considering whether counsel's performance was deficient under *Strickland*'s first prong, "counsel is strongly presumed to have rendered adequate assistance and made all significant decisions in the exercise of reasonable professional judgment." Greiner v. Wells, 417 F.3d 305, 319 (2d Cir. 2005) (quoting Strickland, 466 U.S. at 690). The second

---

[21] Petitioner writes that the "[m]issing witness charge lawyer could have used the investigators report that defen[s]e tr[ied] to get Michelle Read to testify." (Dkt. 13 at 10.)

prong focuses on prejudice to the petitioner.  In order to satisfy the "prejudice" prong in the context of a guilty plea, a habeas petitioner must demonstrate "a reasonable probability that, but for counsel's errors, he would not have pleaded guilty and would have insisted on going to trial." Missouri v. Frye, 132 S. Ct. 1399, 1409 (2012) (quoting Hill v. Lockhart, 474 U.S. 52, 59, (1985)).  A habeas petitioner bears the burden of establishing *both* deficient performance and prejudice.  See Greiner, 417 F.3d at 319.  Thus, "there is no reason for a court deciding an ineffective assistance claim . . . to address both components of the inquiry if the defendant makes an insufficient showing on one."  Strickland, 466 U.S. at 697.

Here, petitioner's defense attorney *did* request a missing witness charge.  Petitioner's contention is that the trial court would have granted the request and delivered a missing witness instruction in petitioner's favor if only defense counsel had proffered evidence that the defense had tried to secure Michelle Read's testimony without success.  However, moments before the trial court denied *petitioner's* request for a missing witness charge, the court heard argument concerning a *prosecution* request for a missing witness charge based on the prosecutor's contention that Ms. Read was afraid of petitioner.  (Tr. 8/16/10: 38 *et seq.*).  Petitioner himself interjected the following in response to that contention:

> THE DEFENDANT: That's why she visits me.
>
> \*   \*   \*   \*   \*   \*   \*   \*   \*
>
> THE DEFENDANT: Afraid.  She visits me in the jail.  Sends me money in jail.

(Tr. 8/16/20: 38).  Thus, in the midst of the charging conference, petitioner himself acknowledged an ongoing, supportive relationship with the witness, undercutting defense counsel's argument that he was entitled to a missing witness charge based on Ms. Read's relationship with the prosecution.  See People v. Savinon, 100 N.Y.2d 192, 200-10 (2003)

(friendship with witness demonstrates "control").  On this record, petitioner's contention that his attorney was ineffective for failing to proffer further evidence in support of a missing charge is plainly meritless.

Moreover, petitioner has not shown that a missing witness instruction, even if more effectively sought by his defense attorney and even if delivered by the court, would have changed the outcome of his trial.  Notably, even without an instruction, defense counsel stressed the prosecution's failure to call Michelle Read as a witness during his summation.  (Tr. 8/16/10: 56, 67.)  This prong of his ineffective assistance claim should therefore be denied on the merits.

F.  Claim Six: Ineffective Assistance of Appellate Counsel

Ineffective assistance of appellate counsel claims are reviewed under the same two-part standard applicable to ineffective assistance of trial counsel claims.  Mayo v. Henderson, 13 F.3d 528, 533 (2d Cir. 1994).  Petitioner must show first that his attorney's performance fell below an objective standard of reasonableness, and second that there is a reasonable probability that but for counsel's error, the outcome would have been different.  Id.  See also Strickland v. Washington, 466 U.S. 668 (1984).  However, appellate counsel "need not (and should not) raise every nonfrivolous claim, but rather may select from among them to maximize the likelihood of success on appeal."  Smith v. Robbins, 528 U.S. 259, 288 (2000).  Indeed, the "process of winnowing out weaker arguments on appeal and focusing on those more likely to prevail, far from being evidence of incompetence, is the hallmark of effective advocacy."  Smith v. Murray, 477 U.S. 527, 536 (1986) (quotations omitted).  Thus, reviewing courts should not "second-guess" reasonable professional judgements or impose on counsel a duty to raise every colorable claim on appeal.  Jackson v. Leonardo, 162 F.3d 81, 85 (2d Cir. 1998).  On the other hand, the Court of Appeals has indicated that "a petitioner may establish constitutionally inadequate

-30-

performance if he shows that counsel omitted significant and obvious issues while pursuing issues that were clearly and significantly weaker." Mayo v. Henderson, supra, 13 F.3d at 533. "To establish prejudice in the appellate context, a petitioner must demonstrate that 'there was a "reasonable probability" that [his] claim would have been successful[.]'" Id. at 534, quoting Claudio v. Scully, 982 F.2d 798, 803 (2d Cir.1992).

Here, appellate counsel raised three claims with regard to the instant conviction: 1) the trial court erred in denying defendant a "missing witness" charge; 2) the prosecution failed to turn over Rosario material; and 3) trial counsel rendered ineffective assistance by failing to demand the Rosario. (Exh. A). The Appellate Division determined that the Rosario claim was both unpreserved and meritless, and denied the other two claims on the merits. People v. Read, 97 A.D.3d 702, 703-04.

Petitioner now argues that appellate counsel was ineffective for failing to argue that: 1) his conviction was based on "changed testimony;" and (2) the order of protection was invalid. Neither claim was presented in state court.

### 1. Failure to Argue that the Conviction was Based on "Changed Testimony"

In Part 3 of his petition, petitioner states, "Appellant Attorney . . . [is] ineffective for not arguing this/more like discovered this changed testimony derived from." (Dkt. 13-11 at 12). This claim is unexhausted, as petitioner raises it for the first time in the instant petition. Petitioner still has a remedy available in state court, so the claim cannot be "deemed exhausted." See People v. Bachert, 69 N.Y.2d 593 (1987) (authorizing coram nobis petition for ineffective assistance of appellate counsel claims). However, the Court may deny this unexhausted claim because it is plainly meritless. See 28 U.S.C. § 2254(b)(2); Rhines, 544 U.S. at 277-78 (2005).

As discussed at pp. 21-22, supra, Petitioner's "changed testimony" claim is a variation of

the <u>Rosario</u> claim which counsel *did* raise on direct appeal.  Appellate counsel moved for production of the grand jury minutes, "believing that a comparison of those minutes with the pre-trial hearing testimony could yield important material" for the appeal.  (Exh. A at 15-16). The Second Department granted counsel's motion to the extent of ordering the District Attorney to file a sealed transcript of the grand jury minutes with the Clerk of the appellate court for in camera review.  (<u>Id.</u> at 16).  The sealed grand jury minutes were presented to the Appellate Division for review on December 7, 2011.  (Dkt. 31 at 2).  Appellate counsel noted that it was "regrettable" that he was unable to "be more specific as to what those discrepancies in testimony were," as the Appellate Division "*denied* Appellant's motion to have the relevant grand jury testimony produced to appellate counsel."  (Exh. A at 31 n.1).  Even without the benefit of this material, appellate counsel argued that the prosecution's failure to turn over the grand jury minutes was a <u>Rosario</u> violation.  (<u>Id.</u> at 28).  Thus, appellate counsel *did* raise the substance of petitioner's "changed testimony" claim on direct appeal, so petitioner's ineffective assistance claim on this ground is plainly meritless.

To the extent that petitioner claims that counsel was ineffective for omitting this claim in his leave application to the Court of Appeals, any such claim is without merit, because there is no constitutional right to counsel on a discretionary appeal, and "a petitioner may not raise an ineffective assistance of counsel claim where he has no underlying constitutional right to counsel."  <u>McCray v. Bennet</u>, No. 02 Civ. 0839 (LTS)(HBP), 2005 WL 3182051, at *3 (S.D.N.Y. Nov. 22, 2005) (citing <u>Ross v. Moffitt</u>, 417 U.S. 600 (1974) (declining to extend the right to counsel beyond appellant's first appeal); <u>Wainwright v. Torna</u>, 455 U.S. 586, 587-88, 102 S. Ct. 1300, 1301, 71 L. Ed. 2d 475 (1982) (habeas petitioner had no right to counsel on a discretionary appeal from an intermediate state appellate court to the Florida Supreme Court);

Hernandez v. Greiner, 414 F.3d 266, 270 (2d Cir.2005) (no right to counsel for a "second-level appeal" to New York Court of Appeals even after leave granted)).

### 2. Failure to Argue Invalidity of the Order of Protection

In Part 2 of his petition, petitioner states that "[a]ppellant Attorney was ineffective for not pushing the [invalidity of the order of protection] issue further. Once he became aware of the circumstances raised by the People's Brief on the issue of the [purportedly deficient] order of protection. Appellant Attorney proved ineffective by not using this ammunition afforded to him." (Dkt. 13-10 at 3-4). This claim, too, is unexhausted, but petitioner again has an available remedy in state court, so the claim cannot be "deemed exhausted." See Bachert, 69 N.Y.2d 593 (authorizing *coram nobis* petition for ineffective assistance of appellate counsel claims). However, the Court may deny this unexhausted claim because it is plainly meritless. See 28 U.S.C. § 2254(b)(2); Rhines, 544 U.S. at 277-78 (2005).

Petitioner has not demonstrated that he was prejudiced by appellate counsel's failure to argue that his conviction was based on an invalid order of protection. As explained above, appellate counsel "does not have a duty to advance every nonfrivolous argument." Mayo, 13 F.3d at 533. In this case, the trial court denied defendant's application to dismiss the indictment because "a simple box is not filled with the charge" in an effort to "always look for substance over form." (8/16/10: 5). The trial court noted that "the defendant was aware of the Court['s] instruction not to harass, not to assault his wife, and the claim here is that he did so and violated an existing order of protection." (Id.). To the extent that petitioner contends that appellate counsel should have revived this argument on appeal, it cannot be said that this claim was stronger than the claims counsel chose to present. To the extent that petitioner asserts that counsel erred in failing to raise on appeal petitioner's contention that Justice Alfieri's signature

on the order of protection was invalid, petitioner has not established that counsel was ineffective. This purported claim was not raised at trial or otherwise preserved for appellate review, and the factual basis for the claim is contradicted by the court clerk's testimony that did, in fact, sign the order.  Therefore, this ineffective assistance claim is plainly meritless and provides no basis for habeas relief.

## IV. CONCLUSION

For the reasons set forth above, I conclude—and respectfully recommend that your Honor should conclude—that the instant petition for a writ of habeas corpus should be denied in its entirety.  Further, because reasonable jurists would not find it debatable that petitioner has failed to demonstrate by a substantial showing that he was denied a constitutional right, I recommend that no certificate of appealability be issued.  See 28 U.S.C. § 2253(c); Slack v. McDaniel, 529 U.S. 473, 483–84 (2000).

Dated:   October ⊗ 2015
       White Plains, New York

Respectfully Submitted,

PAUL E. DAVISON, U.S.M.J.

## NOTICE

Pursuant to 28 U.S.C. § 636(b)(1) and Rule 72(b) of the Federal Rules of Civil Procedure, the parties shall have fourteen (14) days, plus an additional three (3) days, or a total of seventeen (17) days, from service of this Report and Recommendation to serve and file written objections.  See also Fed. R. Civ. P. 6(a), (b), (d).  Such objections, if any, along with any responses to the objections, shall be filed with the Clerk of the Court with extra copies

delivered to the chambers of the Hon. Kenneth Karas, at the Hon. Charles L. Brieant, Jr. Federal

Building and United States Courthouse, 300 Quarropas Street, White Plains, New York 10601,

and to the chambers of the undersigned at the same address.

Failure to file timely objections to this Report and Recommendation will preclude later

appellate review of any order of judgment that will be entered.  See Caidor v. Onondaga County,

517 F.3d 601, 604 (2d Cir. 2008).

Requests for extensions of time to file objections must be made to Judge Karas.


A copy of this Report and Recommendation has been mailed to:

David Paul Read, 10-A-5909
Collins Correctional Facility
P.O. Box 340
Collins, NY 14034